**No. 15-3805**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

UNITED STATES *EX REL*. GERASIMOS PETRATOS, *et al*,
*Relator-Appellant,*

*v.*

GENENTECH INC, *et al*.,
*Defendants-Appellees.*

On Appeal from the United States District Court
For The District of New Jersey
Case No.2:11-cv-3691
Honorable Madeline C. Arleo, District Judge

# PETITION OF RELATOR-APPELLANT FOR PANEL REHEARING AND REHEARING *EN BANC*

MICHAEL J. DEBENEDICTIS
**DEBENEDICTIS & DEBENEDICTIS, LLC**
20 BRACE ROAD, SUITE 350
CHERRY HILL, NJ 08034
TELEPHONE: (856) 795-2101
mjd@debenedictislaw.com

EFTHIMIOS PARASIDIS, ESQ.
4250 CHADBOURNE DRIVE
COLUMBUS, OHIO 43220
TELEPHONE: (646) 316-7787
efthimi@gmail.com

ADAM GUTRIDE
SETH SAFIER
ANTHONY PATEK
MATTHEW T. MCCRARY
**GUTRIDE SAFIER LLP**
100 PINE STREET; SUITE 1250
SAN FRANCISCO, CA 94111
TELEPHONE: (415) 639-9090
adam@gutridesafier.com
seth@ gutridesafier.com
anthony@gutridesafier.com
matt@gutridesafier.com

*Attorneys for Appellant, United States Ex Rel., Gerasimos Petratos*

May 15, 2017

# TABLE OF CONTENTS

Table of Contents……………………………………………………………….i

Table of Authorities…………………………………………………………iii

Required Statement for Petition for Rehearing and Rehearing *En Banc*…………v

Introduction……………………………………………………………………..1

Argument……………………………………………………………………….4

I. The Panel's "Heightened Materiality Standard" Conflicts with the Language of the FCA and Supreme Court Precedent……………...4

II. The Panel's Decision Should Be Revisited in Order to Address Several Material Errors of Fact……………………………………12

Conclusion……………………………………………………………………15

Exhibit A: Panel Opinion

# TABLE OF AUTHORITIES

## Cases

*Cook County v. U.S. ex rel. Chandler*,
538 U.S. 119 (2009)……………………………………………………11

*Farkas v. Blue Cross & Blue Shield of Michigan*,
24 F.3d 853 (6th Cir. 1994)……………………………………………10

*Int'l Rehab. Scis. Inc. v. Sebelius*,
688 F.3d 994 (9th Cir. 2012)…………………………………………..10

*Maximum Comfort Inc. v. Sec'y of Health & Human Servs.*,
512 F.3d 1081 (9th Cir. 2007)…………………………………………..9

*United States ex rel. Feldman v. Van Gorp.*,
697 F.3d 78 (2d Cir. 2012)……………………………………………...5

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*,
352 F.3d 908 (4th Cir. 2003)……………………………………………5

*United States ex rel. Kelly v. Serco, Inc.*,
846 F.3d 325 (9th Cir. 2017)……………………………………………6

*United States ex rel. Longhi v. Lithium Power Techs.*,
575 F.3d 458 (5th Cir. 2009)……………………………………………5

*United States ex rel. Loughren v. Unum Group*,
613 F.3d 300 (1st Cir. 2010)……………………………………………5

*United States ex rel. Matheny v. Medco Health Solutions, Inc.*,
671 F.3d 1217 (11th Cir. 2012)…………………………………………5

*U.S. ex rel. Merena v. SmithKline Beecham Corp.*,
205 F.3d 97 (3d Cir. 2000)……………………………………………...8

*United States v. Gaudin*,
515 U.S. 506 (1995)……………………………………………………11

*United States v. Rogan*,
517 F.3d 449 (7th Cir. 2008)……………………………………………5

*United States v. Universal Rehab. Servs. (PA), Inc.*,
205 F.3d 657 (3d Cir. 2000)……………………………………………9

*Universal Health Services, Inc. v. United States ex rel. Escobar*,
136 S. Ct. 1989 (2016)………………………………………………*passim*

**Statutes**

42 U.S.C. § 1395y(a)(1)(A)……………………………………………………3, 7

**REQUIRED STATEMENT FOR PETITION FOR REHEARING AND REHEARING *EN BANC***

Pursuant to Rule 35 of the Federal Rules of Appellate Procedure and Rule 35.1 of the Third Circuit Local Appellate Rules, Appellant United States *ex rel.* Gerasimos Petratos hereby petitions the Court to grant panel rehearing, or rehearing *en banc,* and to set aside the decision of the panel filed on May 1, 2017, a copy of which is attached as Exhibit "A".

The panel's decision eviscerates the ability of the False Claims Act ("FCA") to reach claims for payment where doctors are fraudulently induced to overprescribe treatments that are not medically necessary. The panel reached this holding by creating a self-characterized "heightened materiality standard" for all cases brought under the FCA. It is the undersigned counsel's considered opinion that the panel's "heightened materiality standard" departs drastically from, and conflicts with, the materiality standard set forth last term by the U.S. Supreme Court in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). It also contradicts post-*Escobar* decisions in other circuit courts of appeal, and contradicts several decisions of this Court regarding prosecution of claims for medical treatment that is not reasonable and necessary. Accordingly, the Court should rehear this case *en banc* to bring this Court's law in line with that of the Supreme Court. *See* F.R.A.P. 35(b)(1)(A).

The undersigned express a belief, based upon a reasoned and studied professional judgment, that the panel decision creating a "heightened materiality requirement" is contrary to the *Escobar* Court's decision, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, and that the appeal involves a question of exceptional importance. By placing *outside* of the reach of the FCA fraud that causes prescribing physicians to present false claims for reimbursement (and that has the actual and intended effect of overbilling Medicare/Medicaid), the panel's heightened materiality standard significantly circumscribes the False Claims Act's reach, and the government's ability to police reimbursements for procedures not medically reasonable or necessary. Indeed, the panel's decision prevents the FCA from applying to the underlying fraud that relator has alleged, whereby Genentech manipulated the *standard of care for categories of patients* treated with the cancer drug Avastin with the intended and actual effect of overbilling. Accordingly, this appeal involves an issue of exceptional importance, namely: Under what circumstances is a fraud directed at prescribing physicians—with the intended goal of and actual effect of overbilling Medicare and Medicaid—actionable under the False Claim Act?

## INTRODUCTION

At its core, Relator has alleged a classic overbilling scheme. In an effort to increase revenues, Genentech willfully suppressed the fact that its high-priced cancer drug, Avastin, is inappropriate for use, or at least should be used at lower doses, in specified groups of "at-risk" patients. With its plan, Genentech caused doctors to prescribe Avastin to patients for whom the drug was not medically reasonable or necessary and therefore to whom the drug provided no therapeutic value. The fraud was directed at the physicians and designed to manipulate their decision. The doctors, in turn, submitted fraudulently inflated claims for reimbursement.

Relator alleges that Genentech committed this fraud because it was concerned about the financial impact disclosure would have on the company's bottom line. Genentech knew that disclosure would result in a change in the standard of care for specified categories of patients. Genentech committed this fraud with the intent (and actual effect) of inflating requests for reimbursement from the government in circumstances where treatment with Avastin was not medically reasonable or necessary, a classic false claim.

Despite these allegations, the district court found that Genentech's scheme does not implicate the FCA because it determined that doctors play no role in determining what is medically reasonable and necessary, and thus the claims for

Avastin were not false. Appx17. The panel held that the district court erred in this respect, and that "the claims at issue here are false if Avastin was not 'reasonable and necessary'" based on a physician's determination. Op. at 8. *However*, the panel then affirmed on an alternative ground by creating a "heightened materiality standard," ruling that Relator failed to meet the new standard. *Id*. at 20. The panel mistakenly determined that the underlying fraud *directed at the physicians* was not material to CMS's decision to pay, regardless of whether the physicians' certification of medical necessity is material to CMS.

However, the Supreme Court in *Escobar* did not announce a "heightened materiality standard." Rather, the Court held that, to state a claim under the False Claims Act on an "implied false certification" theory based upon "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement," the misrepresentation *about the particular statute or regulation violated* "must be material to the Government's payment decision." *Id*. at 2002. Here, Relator alleges that the particular statute violated was 42 U.S.C. § 1395y(a)(1)(A), which provides that "no payment may be made" for medical care that is "not reasonable and necessary for the diagnosis and treatment of illness or injury." Thus, under *Escobar*, the relevant inquiry for materiality purposes in this implied false certification theory is whether *the physician's certification of medical*

*necessity* is material to the government's decision to pay for claims of Avastin. Under the relevant factors set forth in *Escobar*, the answer to that question is yes.

Relator seeks rehearing *en banc* because the panel's "heightened materiality standard" conflicts with the materiality standard announced by the Supreme Court in *Escobar*, 136 S. Ct. 1989. The panel's "heightened materiality standard" (Op. at 20) does not comport with the language of the statute and the Supreme Court's interpretation of materiality. Since the fraud, as pled, impacted the physicians upon which CMS relies in making payment decisions, it must be "material to the Government's payment decision."

Relator also respectfully seeks panel rehearing because the panel determined that Relator could not satisfy the newly-minted "heightened materiality standard" because he had made various "concessions" that the government agency responsible for paying the claims (CMS) would not have done anything differently in light of the underlying fraud relator alleged. To the contrary, Relator not only never made any such concessions, he argued the opposite.

## ARGUMENT

### I. The Panel's "Heightened Materiality Standard" Conflicts with the Language of the FCA and Supreme Court Precedent

In *Escobar*, the Supreme Court provided guidance on analyzing materiality under the FCA. The Court began with the statutory definition of materiality—"having a natural tendency to influence, or be capable of influencing, the payment

or receipt of money or property," 31 U.S.C. § 3729(b)(4)—and stressed that this was the same definition employed in "other federal fraud statutes," which came from "common-law antecedents." *Escobar*, 136 S. Ct. at 2003.

The Court explained that the basic concept of materiality is the same in all of these contexts, focusing upon "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Id.* Citing treatises on both torts and contracts, the Court explained that a matter is material if: (1) a reasonable person would attach importance to it in determining a choice of action in the transaction, or (2) the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter in determining his choice of action, regardless whether a reasonable person would do so. *Id.* at 2002-03 (citing Restatement (Second) of Torts § 538, at 80; Restatement (Second) of Contracts § 162(2), and Comment c, at 439, 441 (1979). The Court stated that the "materiality standard is demanding," and made clear that the inquiry is holistic and considers a variety of factors.[1]

---

[1] The *Escobar* Court did not impose a heightened test for materiality beyond the "natural tendency" test codified in the FCA, entrenched in the common law, and applied in numerous FCA cases. *See, e.g.*, *United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, 307 (1st Cir. 2010) ("a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed"); *United States ex rel. Feldman v. Van Gorp.*, 697 F.3d 78, 96 (2d Cir. 2012) (test for materiality "does not require evidence that a program officer relied upon the specific falsehoods proven"); *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217,

However, the Panel opinion departs from the Supreme Court's standard and invents its own "heightened materiality standard" (Op. at 20) whereby it examines whether *Genentech's underlying fraudulent conduct in inducing the physicians' false certifications* in this indirect causation case was material to the government's decision to pay. *See* Op. at 15 (finding a lack of materiality because "Petratos does not claim that *Genentech's safety-related reporting* violated any statute or regulation. He acknowledges that the FDA would not 'have acted differently *had Genentech told the truth*.'") (emphasis added).

However, the Panel's "heightened materiality standard" mistakenly conflates materiality—which focuses on the *falsity of the claim submitted to the government* and whether that falsity would influence the decision to pay—with causation, which in an indirect-causation cause, such as this one, focuses on the conduct that ultimately resulted in the submission of the false claim. The panel's standard conflicts not only with the Supreme Court's decision in *Escobar*, but also with a decision of the Ninth Circuit that the panel, paradoxically, cites as support for its "heightened" standard. *See United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017) ("[T]he FCA attaches liability, *not to the underlying fraudulent*

---

1228-29 (11th Cir. 2012) (same); *United States ex rel. Longhi v. Lithium Power Techs.*, 575 F.3d 458, 469-70 (5th Cir. 2009) (mere potential to influence is sufficient); *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) (holding that testimony of federal officials that they would not have paid claim was not necessary); *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 916-17 (4th Cir. 2003).

*activity* or to the government's wrongful payment, but to the 'claim for payment.' . . . [it] does not concern itself with whether or to what extend there exists a *menacing underlying scheme*." (emphases added)); Op. at 20 (citing *Kelly* as one of "many other federal courts that have recognized the heightened materiality standard").

In *Escobar*, the Supreme Court announced a variety of factors relevant to determining whether a *false certification of compliance with a statute or regulatory requirement is material* to the government's decision to pay and stressed that no one factor is automatically dispositive. 136 S. Ct. at 2001. For example, the Court explained, "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory or contractual requirement as a condition of payment." *Id.* at 2003. But while designation as a condition of payment is "not automatically dispositive," the Court recognized that it is relevant to the materiality inquiry. *Id.* In addition, the Supreme Court identified at least three other factors bearing on the materiality inquiry, including whether the violation goes to the "essence of the bargain," *id.* n.5 (quoting *Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 400 (1931)), whether the violation is significant or "minor or insubstantial," *id.*, and whether the government took action when it had actual knowledge of similar violations, *id.* at 2003–04. The

Court thus made clear that the materiality of a misrepresentation depends upon the capacity of the violation to affect the government decision maker.

An analysis of these factors reveals that the physician's certification of medical necessity is material to the government's decision to pay the claim under *Escobar*. First, 42 U.S.C. § 1395y(a)(1)(A) provides that "*no payment may be made*" for medical care that is "not reasonable and necessary for the diagnosis and treatment of illness or injury." (emphasis added) Here, because Petratos alleges Genentech caused physicians to misrepresent that the treatments were medically reasonable and necessary, the appropriate inquiry into materiality under the Supreme Court's standard is *whether the physician's certification of medical necessity is material to the government's decision to pay claims*. The answer to this question, as Relator has consistently argued, is an obvious yes.

Second, Relator does not allege "minor or insubstantial" violations of the medical necessity requirement, but alleges that the *standard of care* for *entire* would have changed had Genentech not engaged in fraudulent suppression of Avastin's risks. If Relator had alleged that Genentech's fraud would have influenced only a few idiosyncratic physicians into revoking their determinations of medical necessity, then, perhaps, it would be too insubstantial to be material to the government's payment decision. Moreover, Petratos's allegations include corroboration from an independent and well-respected oncologist who indicates

that the standard of care would have changed had Genentech not committed the fraud. Simply put, had the doctors knowingly submitted the overbillinsg they would be subject to prosecution under the FCA. So should Genentech.

Third, there is no doubt that the government often "takes action" and prosecutes individuals or entities when it determines that the underlying treatment at issue was not medically necessary. This Court has recognized several such instances—see *U.S. ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 98–99 (3d Cir. 2000), as amended (Apr. 21, 2000) (upholding FCA claims against laboratory where "treating physicians had made no determination that the additional tests were medically necessary for the diagnosis or treatment of patients; instead. As a result, the laboratories submitted bills—and received payment—for tests that were medically unnecessary"); *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 660 (3d Cir. 2000) (upholding criminal conviction where the Defendant "intentionally altered the claims it submitted" to falsely demonstrate medical necessity, noting in particular that the physician's evaluation form was "a vitally important document for Medicare purposes insofar as it provided an assessment that the treatment was medically necessary for the patient. Indeed, Medicare reviewers specifically considered the evaluation in rendering reimbursement decisions")—as have other circuit courts of appeal, see *Maximum Comfort Inc. v. Sec'y of Health & Human Servs.*, 512 F.3d 1081, 1083–84 (9th Cir.

2007) ("The Secretary determined that Maximum Comfort was not entitled to reimbursement for equipment it supplied to certain Medicare beneficiaries, because the company did not establish sufficiently that the power wheelchairs were medically necessary. . . . In order for the beneficiary, and therefore the equipment supplier, to be reimbursed for a claim, Medicare requires the beneficiary's physician to certify that the services provided were medically required."); *Int'l Rehab. Scis. Inc. v. Sebelius*, 688 F.3d 994, 998 (9th Cir. 2012) ("In each of the four decisions, the Medicare Appeals Council concluded that RS Medical had not met its burden of establishing that the BIO–1000 was 'reasonable and necessary' for treatment."); *Farkas v. Blue Cross & Blue Shield of Michigan*, 24 F.3d 853, 854 n.1 (6th Cir. 1994) ("The primary goal of prepayment utilization screening is to ensure that Medicare pays only for medically necessary services."). Indeed, there can be no serious question that CMS "refuses to pay claims" when CMS knows that a claim has been submitted for treatment that is not medically reasonably and necessary.

The multiple factors the Supreme Court identified as relevant to the materiality inquiry confirm that *Escobar* did not *sub silentio* depart from the statutory and common law definitions of materiality and endorse an "outcome-

materiality" standard like the one the panel adopted.[2] If the Court had intended materiality to turn solely upon whether the government would *actually* have denied payment had it known of the fraud, it would not have been necessary to identify any other factors relevant to the multi-pronged materiality inquiry. Indeed, the Court stressed that, even where the government has actually paid a claim with knowledge of its falsity, such action only constitutes "very strong evidence that those requirements are not material." *Escobar*, 136 S Ct. at 2003. That holding is directly at odds with an outcome-materiality standard, such as the one adopted by the Panel. Importantly, because materiality depends on a holistic assessment of many factors, it is likely to be a determination for a jury in many cases. *See* Restatement (Second) of Torts § 538 cmt. e (1977) (recognizing that materiality of a misrepresentation will often depend on a jury determination of what is reasonable); *United States v. Gaudin*, 515 U.S. 506, 512 (1995) (explaining that

---

[2] By embracing the "natural tendency" test codified in the FCA, the Court made clear that materiality is determined through a holistic assessment of the *tendency* or *capacity* of the undisclosed violation to affect the decision maker. In contrast, the panel here departs from the statutory text and the common law and holds that a relator (or the United States) must demonstrate that the government would *in fact* refuse payment if it knew of the alleged violations. This highlights the import of cases like *Kungys*, which specifically rejected the argument that materiality employed a standard of "more likely than not." *Kungys*, 485 U.S. at 771. Moreover, the Senate Report accompanying the legislation that established the definition of materiality in the FCA stated that the definition was meant to codify the definition from *Neder*, 527 U.S. at 16, which had applied the materiality standard from *Kungys*. *See* S. Rep. No. 111-10 at 12 & n.6 (2009).

materiality "is peculiarly one for the trier of fact"); *LaFarge N. Am., Inc. v. Discovery Group LLC*, 574 F.3d 973, 982-83 (8th Cir. 2009) (same).

In *Escobar*, a unanimous Supreme Court took an expansive view of false claims by holding that implied false certifications are actionable under the FCA. Although the FCA "is not an all-purpose anti-fraud statute," *Escobar*, 136 S. Ct. at 2003, Congress drafted the act "expansively…to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Cook County v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2009). The materiality standard as outlined by the panel does not comport with the language and spirit of the FCA and the Supreme Court's interpretation of the statute.

## II. The Panel's Decision Should Be Revisited in Order to Address Several Material Errors of Fact

The panel's application of its new "heighted materiality" standard is fundamentally flawed because the panel committed several material errors of fact.

First, the panel indicated that "Petratos does not claim that Genentech's safety-related reporting violated any statute or regulation" (Op. at 15) and that Petratos "concedes that Genentech followed all pertinent statutes and regulations." Op. at 22. These statements are incorrect. The amended complaint provides copious details of FDA regulations that require Genentech to report newly discovered information on drug risks. App. 280-288 (Am. Cmplt. ¶¶ 47-70); *see also* Appellant's Op. Br. at 9-10. For example, among these requirements

Genentech is obligated to update Avastin's label in light of new information related to safety and efficacy. App. 286-287 (Am. Cmplt. ¶¶ 66-67); *see also* Appellant's Op. Br. at 9-10. The Supreme Court had clarified that this obligation must be satisfied, regardless of whether the FDA asks that the company update the label. App. 286-287 (Am. Cmplt. ¶¶ 66-67); *see also* Appellant's Op. Br. at 9-10. Petratos further alleges that Genentech failed to update the drug label—notwithstanding several internal analyses that documented new risks—and that Genentech failed to update the label in order to minimize the financial harm to the company that disclosure would bring. App. 269-275 (Am. Cmplt. ¶¶ 6-23).

Second, the panel found that Petratos "acknowledges that the FDA would not 'have acted differently had Genentech told the truth.'" Op. at 15 (citing App. 64). This statement likewise is incorrect. That quote comes from a brief filed by Genentech, which patently mischaracterizes Petratos' argument. The crux of Petratos' argument (then and now) is that, for purposes of the FCA, the court must focus on whether the fraud would have caused CMS to view individual Avastin claims differently had they known the doctor would not have prescribed it; whether the FDA would have acted differently is a secondary matter that may impact CMS, but FDA action or inaction does not tie the hands of CMS in considering whether Genentech's fraud caused the submission of false claims. App. 86-87 (note 10). Placed in other words, whether the FDA would have required label changes or

pulled additional indications from Avastin (as the agency did for metastatic breast cancer) is not dispositive of whether CMS would have found that certain claims for Avastin were not medically reasonable and necessary had it know that both the specific doctor and the reasonable doctor did not believe it was medically reasonable and necessary.

Third, the panel indicated that Petratos "concedes that the expert agencies and government regulators have deemed these violations insubstantial (or at least would do so if made aware)." Op. at 15. <u>However, at no point does Petratos make this concession with respect to CMS</u>. To the contrary, Petratos alleges that CMS would not have provided payment for Avastin in cases where it actually knew that drug was subjectively and objectively not medically reasonable and necessary. App. 272-275, 289-293, 337-343 (Am. Cmplt. ¶¶ 16, 19-21, 76-88, 230-251); *see also* Appellant's Op. Br. at 45 (indicating that Genentech's fraud "caused federal and state governments to pay money they otherwise would not have paid"). In its amicus brief, the government highlights the fact that Petratos makes detailed allegations that, because of Genentech's fraud and suppression of information "the government would have reimbursed for Avastin at lower rates, for lower dosages, or not at all." Gov't Br. at 13. Insofar as this case has yet to enter discovery, Petratos has not had the opportunity to develop facts that prove this allegation. But, that level of proof is not required in a response to a motion to dismiss.

Fourth, the panel found that Petratos focuses "solely on the physician's materiality determination." Op. at 18. While Petratos highlighted that a materiality analysis must incorporate an evaluation of whether the physicians were duped by Genentech's fraud, this argument was not to the exclusion of the government. As Petratos alleges, the suppressed information is material to the *government's* decision to reimburse for Avastin. App. 272-275, 289-293, 337-343 (Am. Cmplt. ¶¶ 16, 19-21, 76-88, 230-251). *That the government continues to reimburse for Avastin does not doom this argument.* Since the filing of this lawsuit, it is not known whether CMS has been denying claims for Avastin for the at-risk patients, nor is it known whether physicians have stopped prescribing the drug for such patients. Such information can only be gleamed from discovery.

Fifth, the panel places heavy reliance on the fact that, since the filing of this lawsuit, CMS continues to reimburse for Avastin and the FDA has approved additional indications. Op. at 15. However, there is nothing in the factual record of this case to evaluate whether CMS continues to pay for Avastin in cases where the government actually knows that the drug was prescribed when not medically reasonable and necessary. To the contrary, the government has unambiguously stated that reimbursement for Avastin is proper only if the treatment is reasonable and necessary for the patient. Gov't Amicus Br. at 9.

Petratos satisfies the materiality standard of the FCA and dismissal of the complaint *with prejudice* at the pleading stage is improper.

## CONCLUSION

Relator respectfully requests that the panel or the Court *en banc* reverse the decision.

Respectfully submitted this 15th day of May, 2017.

/s/ Michael J. DeBenedictis

Michael J. DeBenedictis, Esq.
DEBENEDICTIS & DEBENEDICTIS, LLC

Adam Gutride, Esq.
Seth Safier, Esq.
Anthony Patek, Esq.
Matthew T. McCrary, Esq.
GUTRIDE SAFIER LLP

Efthimios Parasidis, Esq.

*Attorneys for Relator-Appellant*

## CERTIFICATE OF SERVICE

I, Michael J. DeBenedictis, certify that on this 15th day of May, 2017, I served this Petition for Panel Rehearing or Rehearing *en banc* on counsel for Appellants by causing an electronic copy of the petition to be filed via this Court's CM/ECF system.

/s/ Michael J. DeBenedictis

Michael J. DeBenedictis, Esq.
DEBENEDICTIS & DEBENEDICTIS, LLC